SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**PAUL T. MALONEY, OSB #013366**
Paul.Maloney@usdoj.gov
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**PORTLAND DIVISION**

**UNITED STATES OF AMERICA**

**v.**

**JOCSAN SOTO MONTOYA,**

**Defendant.**

**3:25-cr-00523-SI**

**GOVERNMENT'S SENTENCING MEMORANDUM**

Defendant is before the Court for sentencing for his role within a drug trafficking organization responsible for distributing large quantities of narcotics into Oregon. Pursuant to a plea agreement, he pled guilty to Count Two of the indictment. The government has agreed to recommend the low-end of the calculated guideline, here, 18 months' imprisonment, followed by five years' supervised release. The government recommends this sentence because it is consistent with the advisory sentencing guidelines, proportional to defendant's conduct, accounts for defendant's history and circumstances, and avoids unwarranted sentencing disparities. The recommended sentence therefore achieves the goals of sentencing.

# I. SENTENCING CALCULATIONS

## A. Plea Agreement and PSR Guideline Calculation

The government's guideline calculation is consistent with the Presentence Report (PSR).

| Provision | Description | Offense Level Calculation |
|---|---|---|
| USSG § 2D1.1(c)(8) | 40-160 grams of fentanyl | **BOL=24** |
| USSG § 2D1.1(b)(18) | Safety valve | -2 |
| | **Adjusted Offense Level** | **22** |
| USSG § 3E1.1(a) | Acceptance of responsibility | -3 |
| USSG § 4C1.1 | Zero-point offender | -2 |
| | **Total Offense Level** | **17** |

The government has agreed to recommend several reductions as detailed in the confidential supplement to the PSR including a three-level acceptance of responsibility reduction, and a two-level reduction for zero-point offender. After all these reductions, the government calculates a total offense level of 17. The PSR correctly calculates defendant's criminal history category I (zero points). The resultant guideline range is 24-30 months' imprisonment.

Pursuant to the plea agreement the government has agreed to recommend a two-level downward variance for all 3553(a) factors including defendant's early resolution of this case with no motions or needless delay. The government recommends a sentence of 18 months' custody followed by five years' supervised release. The plea agreement allows for defendant to seek additional 3553(a) reductions, however, for the reasons set forth below, no further reductions are necessary to achieve a sufficient sentence.

## C. The Recommended Sentence

Pursuant to the plea agreement, the government recommends a low-end sentence of 18 months' imprisonment to be followed by five years' supervised release. This sentence is sufficient, but not more than necessary, to achieve the goals of sentencing.

## II. ARGUMENT

### A. Factual Summary

The PSR writer accurately summarized the relevant facts of the government's investigation. PSR ¶¶ 24-40. In summary, FBI Task Force investigators learned from a confidential reliable informant (CRI) that fentanyl was being distributed by the defendant under the alias "Richard" in the Portland, Oregon area using a phone number ending in 7101. Investigators arranged three controlled buys of fentanyl from "Richard" using the CRI, where defendant provided an amount of fentanyl in exchange for money.

During the investigation, investigators obtained a federal cell phone geolocation search warrant for the defendant's cell phone that they had contacted for the controlled buys. They additionally obtained a federal tracking warrant to install a tracker on the Hyundai Elantra defendant used to drive to the controlled buys. Investigators located the Hyundai parked regularly overnight at an apartment complex in Gresham, Oregon.

On December 1, 2025, investigators set up surveillance at the Gresham apartment complex. Using physical and electronic surveillance, including geolocation data, investigators saw defendant appear from an unknown apartment, enter the Hyundai, and drive away from the area to an apartment in Portland. Investigators saw defendant briefly stop inside the apartment and emerge carrying a bag. Investigators observed the defendant driving on side streets and through neighborhoods in square or rectangle patterns, a tactic they recognized as counter-surveillance tactics that they found consistent with the defendant's behavior during the previous controlled buys.

Investigators later lost visual sight and instead used geolocation data to locate the defendant, after which they observed defendant's car pull over to the curb to let a male exit the

passenger seat of the vehicle. The man had not previously been in the vehicle, and investigators determined that the defendant had sold fentanyl to the man while in the car, in the same manner that investigators had observed during the three controlled buys.

Investigators stopped the defendant's vehicle and detained the defendant. Defendant consented to a search of the vehicle. Investigators lawfully seized approximately 99.5 grams of a substance that tested presumptively positive for fentanyl as well as loose cash located in the same black bag they had seen defendant retrieve from the Portland apartment.

Investigators questioned defendant about the Portland apartment they had seen defendant enter to retrieve the black bag, then they drove defendant to the apartment. Defendant initially refused to provide information but eventually admitted that two people would be in the apartment. Defendant confirmed that one of them was his boss. Investigators entered the apartment, detained the two people inside, and received consent to search the rest of the apartment. Investigators found one brick of fentanyl, sixty individually wrapped bindles of fentanyl, and three large tubs of mannitol, a substance commonly mixed with fentanyl to increase distributable quantities. They also found a blender with white powder residue, rubber gloves, acetone, and a large scale with white residue. Finally, investigators noted that water was left in the bathtub and the toilet appeared to have been recently plunged, indicating the destruction of further evidence of drug activity.

Defendant had been in Portland for two or three months selling fentanyl that he received from his boss, and in exchange, he received $1500 weekly. Defendant estimated that he would sell eight to ten ounces daily.

**B. 18 Months' Imprisonment is Sufficient but Not More than Necessary**

Defendant was not a leader/organizer within the larger drug conspiracy although he did negotiate the terms of the deals he was dispatched to complete. Defendant's role in the DTO was to act as a local distributor for a fee. A two-level reduction is appropriate. The defendant has received many sentencing concessions despite the bulk quantity of drugs he was distributing.

After all other reductions, including a three-level reduction for acceptance of accountability, two-level reduction for zero-point offender, and an agreed upon two level variance, defendant's offense level has been effectively reduced to a level 15. With a criminal history category of I, the government's 18-month sentence is at the low end of that range. No further reductions are necessary to a just sentence in this case.

The plea agreement in this case, and the recommended sentence accounts for the defendant's role in the scheme and balances that against the significant quantities of drugs he possessed with intent to distribute to others for profit. For these reasons, in addition to those detailed in the government's confidential supplement to the PSR, a sentence of 18 months' imprisonment and five years' supervised release is more than warranted for defendant's offense. This sentence is sufficient but not more than necessary to achieve the goals of sentencing.

/ / /

/ / /

/ / /

## III. CONCLUSION

Based on the forgoing, the government recommends that this Court impose a sentence of 18 months' imprisonment, order defendant to pay a $100 fee assessment, followed by a five-year term of supervised release, subject to the standard conditions and special conditions set forth in the PSR.

Dated: September 30, 2026

Respectfully submitted,

SCOTT E. BRADFORD
United States Attorney

PAUL T. MALONEY, OSB #013366
Assistant United States Attorney